**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| ASSOCIATED GROCERS OF NEW ENGLAND, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Docket No. _____ |
| NEW ENGLAND TEAMSTERS PENSION FUND AND THE BOARD OF TRUSTEES OF THE NEW ENGLAND TEAMSTERS PENSION FUND | ) ) ) ) ) | |

## COMPLAINT FOR EQUITABLE RELIEF

NOW COMES Plaintiff, Associated Grocers of New England, Inc. ("AGNE" or "Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants, New England Teamsters Pension Fund ("Pension Fund") and the Board of Trustees of the Pension Fund (the "Trustees") (Trustees and Pension Fund, collectively the "Defendants"), states as follows.

## PRELIMINARY STATEMENT

1.    AGNE brings this action against the Defendants for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA").

2.    AGNE is an employer obligated to make contributions to the Pension Fund and seeks to obtain equitable relief against the Defendants pursuant to 29 U.S.C. § 1132(a)(11)(B) to: (A) enforce the requirement under 29 U.S.C. § 1021(l) that the Defendants produce an estimation of AGNE's withdrawal liability to the Pension Fund, an explanation of how AGNE's estimated

withdrawal liability to the Pension Fund was determined, and the data and assumptions used to calculate such withdrawal liability; and (B) to redress the Defendants' repeated and ongoing failure to produce such information despite AGNE's multiple written requests.

## PARTIES

3.     Associated Grocers Of New England, Inc. is a corporation incorporated in the State of New Hampshire with a principal place of business located at 11 Cooperative Way, Pembroke, NH, 03275.

4.     New England Teamsters Pension Fund (f/k/a the "New England Teamsters & Trucking Industry Fund") is a "multiemployer plan" within the meaning of 29. U.S.C. §§ 1002(37) and 1301(a)(3), governed by an Agreement of Trust dated April 11, 1958, with a principal place of business located at 1 Wall Street, 4th Floor, Burlington MA, 01803.

5.     The Board of Trustees of the Pension Fund is responsible for the establishment, operation, and administration of the Pension Fund pursuant to the Amended and Restated Agreement and Declaration of Trust, effective January 1, 2022 (the "Trust Agreement"). A copy of the Trust Agreement is attached hereto as **Exhibit 1.**

## JURISDICTION AND VENUE

6.      This court has original and exclusive subject matter jurisdiction over AGNE's claims pursuant to 29. U.S.C. § 1132(e) and (f) and 29 U.S.C. § 1451(a).

7.     Venue is properly laid in the District of New Hampshire under 29. U.S.C. § 1132(e)(2) and 29. U.S.C. § 1451(d) in that a substantial part of the events or omissions giving rise to Defendants' breach of their ERISA obligations took place in this district and the Pension Fund does business in this district.

2

## FACTUAL ALLEGATIONS

### The Parties, the Union, and the Pension Plan

8.      AGNE employs members of Teamsters Local Union No. 633 affiliated with The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union") pursuant to a Collective Bargaining Agreement, effective October 16, 2021 and expiring October 17, 2026 (the "2021 CBA").  A copy of the 2021 CBA is attached hereto as **Exhibit 2.**

9.      AGNE and the Union previously entered into a collective bargaining agreement, effective November 14, 2006 (the "2006 CBA"). A copy of the 2006 CBA is attached as **Exhibit 3.**

10.      The terms of the 2006 CBA and each subsequent collective bargaining agreement between AGNE and the Union, require AGNE to make contributions to the Pension Fund on behalf of its employees.

11.      AGNE's contributions to the Pension Fund commenced October 16, 2006, pursuant to a Standard Participation Agreement (the "Participation Agreement") entered into between AGNE and the Union. A copy of the Participation Agreement is attached hereto as **Exhibit 4.**

12.      AGNE acknowledged through its execution of the Participation Agreement that it had executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust, originally dated April 11, 1958 (the "Pension Plan") and had accepted its terms.

13.      The current version of the Pension Plan, titled the "Rules and Regulations for the New England Teamsters Pension Plan," is effective January 1, 2022 (the "2022 Pension Plan"). A copy of the 2022 Pension Plan is attached hereto as **Exhibit 5.**

14.     Among other things, the 2022 Pension Plan defines the Pension Fund's "Plan Year" as "the period of 12 months commencing on October 1 and ending the following September 30. . ." and sets forth how an employer may join the Pension Fund as a "Contributing Employer"; how an employer's status as a "Contributing Employer" can terminate; and the rules applicable to a Contributing Employer's determination of withdrawal liability as a "New Employer" and/or "Existing Employer."

15.     Section 15.01 of the 2022 Pension Plan confirms that the Pension Fund will adhere to the requirements of ERISA with respect to withdrawal liability, stating in pertinent part: "[t]his Article XV sets forth and describes the Plan's rules applicable to Employer Withdrawal Liability pursuant to and in addition to those set forth in ERISA." (emphasis added).

**AGNE Withdrawal and Reentry**

16.     AGNE, the Pension Fund, and the Union entered into an agreement, effective January 1, 2012 (the "Withdrawal Agreement"), pursuant to which AGNE ceased to have any obligation to contribute to the Pension Fund as of 11:59 PM on December 31, 2011. A copy of the Withdrawal Agreement is attached as **Exhibit 6.**

17.     Through the Withdrawal Agreement, AGNE, the Pension Fund, and the Union acknowledged and agreed that the parties' execution of the Withdrawal Agreement constitutes a complete withdrawal of AGNE from the Pension Fund within the meaning of 29 U.S.C. § 1383.

18.     The Withdrawal Agreement fixed AGNE's withdrawal liability at three hundred (300) monthly payments in the amount of $61,900, commencing January 1, 2013, and affirms that by payment of such amount, AGNE would satisfy in full any and all complete and/or partial withdrawal liability incurred by it, except in the event of a mass withdrawal under 29 U.S.C. § 1399(c)(1)(D) occurring after December 31, 2011, affecting the Pension Fund.

4

19.     Concurrent with execution of the Withdrawal Agreement, AGNE, the Pension Fund, and the Union entered into a Reentry Agreement (the "Reentry Agreement"), effective January 1, 2012.  A copy of the Reentry Agreement is attached hereto as **Exhibit 7.**

20.     Pursuant to the Reentry Agreement, AGNE, the Union, and the Pension Fund acknowledged and agreed that AGNE would reenter the Pension Fund as a "New Employer" and be entitled to the benefits and rights thereunder.

21.     Among other things, the Reentry Agreement states:

a.  AGNE's contributions to the Pension Fund as a New Employer will be capped at $3.00 per hour not to exceed $120 per week; (see Exhibit 7, Section 4.)

b.  AGNE's contributions are projected to fully fund its obligations to the Pension Fund as a New Employer; (see Exhibit 7, Section 8.)

c.  that "[u]nder no circumstances shall [AGNE] be liable for any unfunded vested liabilities attributable to an Existing Employer in the Pension Fund." (See Exhibit 7, Section 6.)

22.     In addition, Sections 2 and 9 of the Reentry Agreement states that AGNE may immediately withdraw from the Pension Fund without engaging in collective bargaining and without incurring any acceleration of, or increase in, the amount it pays as a withdrawn Existing Employer if an event described in Section 9 of the Reentry Agreement occurs, including if the Penson Fund (by updating or amending its Rehabilitation Plan or otherwise) requires AGNE, as a New Employer, to increase its contributions, pay surcharges, or otherwise incur any additional financial obligations than those set forth in the Reentry Agreement.

5

**Defendants' Failure to Produce Documents and Information**

23. AGNE, through is President & Chief Executive Officer, sent a letter to the Pension Fund Union Trustee who is the ranking member for the Union, dated September 24, 2025, seeking to understand its obligations and potential withdrawal liability exposure with respect to the Pension Fund in anticipation of its collective bargaining negotiations with the Union beginning in 2026 (the "September 24 Letter"). A copy of the September 24 Letter is attached hereto as **Exhibit 8.**

24. In addition to the impending Union negotiations, the impetus for AGNE sending the September 24 Letter was its receipt of the New England Teamsters Pension Fund Rehabilitation Plan, Amended and Restated, effective January 1, 2025 (the "2025 Rehabilitation Plan"). A copy of the 2025 Rehabilitation Plan is attached hereto as **Exhibit 9.**

25. The 2025 Rehabilitation Plan states that the Pension Fund will remain in "Critical Status" through the plan year ending September 30, 2051, and describes two schedules that Contributing Employers may choose from – the "Preferred Schedule" and the "Default Schedule."

26. Among other things, the Preferred Schedule allows participants to maintain their level of benefits available as of October 1, 2008, but requires annual contribution rate increases of twenty-five cents ($0.25) per hour for a period of five years.

27. Conversely, the Default Schedule (whether elected or automatically imposed for failure to timely adopt the Preferred Schedule), would reduce participants' future benefit accruals by sixty percent (60%), eliminate adjustable benefits, and require annually compounded contribution rate increases of fourteen percent (14%).

28. Both the Preferred Schedule and Default Schedule imposed by the 2025 Rehabilitation Plan increase AGNE's contribution rate above the rate agreed upon in the Reentry Agreement and would trigger AGNE's right to immediately withdraw from the Pension Fund under

6

Section 9 of the Reentry Agreement without any increase or acceleration in the withdrawal liability AGNE currently pays as a withdrawn Existing Employer under the Withdrawal Agreement and Reentry Agreement.

29.    Accordingly, access to detailed information regarding the estimated amount of AGNE's withdrawal liability, explanations of how such withdrawal liability was determined (including the actuarial assumptions and methods to determine the value of the Pension Fund's liabilities and assets), data regarding employer contributions, and any relevant limitations on the estimated withdrawal liability is information relevant and necessary for collective bargaining between AGNE and the Union in the now impending collective bargaining negotiation for a successor agreement to the 2021 CBA attached as Exhibit 2.

30.    To better understand the effects of the 2025 Rehabilitation Plan on AGNE and the Reentry Agreement, AGNE, through its September 24 Letter, requested the following documents and information:

d.  The current Pension Plan documents including all amendments.

e.  Any procedures or practices adopted (that are not reflected in or expand information in Pension Plan documents) including rules and guidelines relating to withdrawal from the Pension Fund, and the calculation and assessment of withdrawal liability.

f.  The Trust Agreement, including all amendments.

g.  Trustee rules, regulations, and guidelines, including rules and guidelines relating to (i) employer contribution rates; and (ii) withdrawal from the Pension Fund; and (iii) the calculation and assessment of withdrawal liability.

h. The most recent summary plan description, and all summaries of material modifications prepared since the date of the summary plan description.

i. A copy of the Participation Agreement.

j. Any quarterly, semi-annual, or annual financial report prepared for the Pension Fund by an investment manager or advisor or other fiduciary that has been in the Pension Fund for the past twelve months (or if none have been received the past twelve months, the most recent reports).

k. The most recent audited financial statements of the Pension Fund.

l. Any periodic actuarial reports (including any sensitivity testing) received by the Pension Fund in the past twelve months (or if none have been received in the past twelve months, the most recent reports).

m. Withdrawal Liability Worksheet(s) providing: (i) an estimate of AGNE's withdrawal liability if it withdraws from the Pension Fund as a New Employer in the New Employer pool; and (ii) its withdrawal liability monthly payment amounts and duration of payments under the Withdrawal Agreement and Reentry Agreement, including (A) an explanation of how the estimates were determined, including a statement of the actuarial assumptions (including interest rates) and methods used to determine the value of the Pension Fund's liabilities and assets and to calculate vested benefits; (B) the data regarding employer contributions, unfunded vested benefits, annual changes in the Pension Funds' unfunded vested benefits; and (C) the application of any relevant limitations on the estimated withdrawal liability.

31. In addition, the September 24 Letter requested responses to the following questions:

    a.  Is AGNE required by law and/or the Pension Fund to adopt either the Preferred Schedule or the Default Schedule in the 2025 Rehabilitation Plan?

    b.  Does AGNE have flexibility to negotiate and restore the rates set forth in the Reentry Agreement - the phased-in contribution rate for New Employers, the cap of $3.00, or both?

    c.  If AGNE does not adopt the contribution rate in the Preferred Schedule, will that result in (i) a reduction in its employees' future or current accrued benefits and/or (ii) a loss or reduction in adjustable benefits?

    d.  Have there been any changes in the Pension Fund's actuarial assumptions or methods (including but not limited to interest rate, mortality, or attrition assumptions) for calculating withdrawal liability or use of an actuarial assumption or method that is different from the assumptions used for determining withdrawal liability as of December 31, 2011, as set forth in Exhibit B to the Reentry Agreement? If there have been changes, please provide a description of any such changes.

32.    The Pension Fund responded to the September 24 Letter, through counsel, by a letter, dated October 9, 2025 (the "October 9 Letter"). A copy of the October 9 Letter is attached hereto as **Exhibit 10.**

33.    The October 9 Letter responded to the questions asked in the September 24 Letter and stated that the documents requested would be provided under separate cover.

34.    An email sent by the Executive Director for the Pension Fund on October 9, 2025 (the "October 9 Email") attached documents largely responsive to the request in the September 24 Letter. A copy of the October 9 Email, excluding its attachments, is attached hereto as **Exhibit 11.**

35. Attached to the October 9 Email, among other things, were copies of the latest withdrawal liability report, the original withdrawal liability memorandum and breakdown for AGNE, and a withdrawal liability worksheet for AGNE for the plan year ending 2024.

36. Omitted from both the October 9 Letter and the October 9 Email, however, were (i) estimates of AGNE's withdrawal liability if it withdrew from the Pension Fund in 2025 as "New Employer" (as defined in the Pension Plan) in the New Employer pool, (ii) estimates of AGNE's withdrawal liability and duration of payments under the Withdrawal Agreement and Reentry Agreement with respect to a 2025 withdrawal from the Pension Fund, and (iii) data and assumptions supporting each of the aforementioned withdrawal liability estimates, as well as the data and assumptions supporting the withdrawal liability worksheet for AGNE for the plan year ending 2024.

37. Accordingly, AGNE's President & CEO sent a follow-up letter to the Pension Fund's legal counsel, dated October 27, 2025 (the "October 27 Letter"), attaching his September 24 Letter and specifically requesting the documents and information missing from the October 9 Letter and the October 9 Email, most importantly, "an explanation of how the withdrawal liability estimates were determined, including a statement of the actuarial assumptions (including interest rates) and methods used to determine the value of the Pension Fund's liabilities and assets and to calculate vested benefits, the data regarding employer contributions, unfunded vested benefits, annual changes in the Pension Funds' unfunded vested benefits, and the application of any relevant limitations on the estimated withdrawal liability." A copy of the October 27 Letter is attached hereto as **Exhibit 12.**

10

38.    Several representatives of the Pension Fund were copied on AGNE's October 27 Letter, including the Executive Director and Fund Manager of the Pension Fund as well as the Co-Chairmen of the Trustees.

39.    On or about February 25, 2026, AGNE received a Withdrawal Liability Worksheet from the Pension Fund for the plan year ending September 30, 2025 (the "WL Worksheet").  A copy of the WL Worksheet is attached hereto as **Exhibit 13.**

40.    Similar to the withdrawal liability worksheet for the plan year ending in 2024 and accompanying documents provided to AGNE on October 9, 2025, the WL Worksheet was void of any information regarding actuarial assumptions and methods used to determine the value of the Pension Fund's liabilities and assets, data regarding employer contributions, unfunded vested benefits, annual changes in the Pension Funds' unfunded vested benefits, and the application of any relevant limitations on the estimated withdrawal liability.

41.    Rather, the WL Worksheet provided the estimated present value of the benefits accrued by AGNE's employees who participate in the Pension Fund and AGNE's contributions as of September 30, 2025. There was no statement as to the actual estimated amount of AGNE's withdrawal liability as a New Employer and as an Existing Employer under the Pension Plan.

42.    On March 23, 2026, exactly one hundred eighty (180) days after sending the September 24 Letter, AGNE's President & CEO, sent another follow-up letter (the "March 23 Letter") to the Pension Fund's legal counsel. A copy of the March 23 Letter is attached hereto as **Exhibit 14.**

43.    As with AGNE's September 24 Letter and October 27 Letter, the Executive Director, Fund Manager, and Co-Chairmen of the Trustees for the Pension Fund were copied on the March 23 Letter.

11

44.     The March 23 Letter acknowledged that AGNE had received the WL Worksheet, but requested clarification regarding whether the estimates provided concern a withdrawal during the 2025 plan year or withdrawals occurring between October 1, 2025, and September 30, 2026, and confirmation of the actual estimated amounts of withdrawal liability that would be assessed on AGNE as a New Employer and a withdrawn Existing Employer if AGNE withdrew from the Pension Fund.

45.     The March 23 Letter also observed that the WL Worksheet failed to provide AGNE "with the underlying data (employer contributions, unfunded vested benefits, and annual changes to unfunded vested benefits), the actuarial assumptions and methods used to calculate benefits and withdrawal liability estimates, and the application of any relevant limitations on the Pension Fund's withdrawal liability estimates." and requested same.

46.     Such underlying data, actuarial assumptions, methods, and limitations are maintained exclusively by the Pension Fund, and are critical to AGNE's assessment of the present funded status of the Pension Fund.

47.     Neither the Pension Fund's legal counsel nor any Trustee or other representative of the Pension Fund responded to the March 23 Letter.

48.     Again, by letter dated April 26, 2026 (the "April 26 Letter") to the Pension Fund's legal counsel, AGNE's President & CEO reiterated its request for clarity regarding the WL Worksheet and the data, assumptions, and methods used by the Pension Fund to calculate AGNE's withdrawal liability obligation. A copy of the April 26 Letter is attached hereto as **Exhibit 15.**

49.     The April 26 Letter copied all Trustees and other representatives of the Pension Fund who were copied on the September 24 Letter, October 27 Letter, and March 23 Letter.

12

50.      AGNE has not received a written response to the April 26 Letter as of the date of this filing.

### COUNT I
### 29 U.S.C. § 1132(a)(11)

51.      Plaintiff repeats and realleges the facts, assertions, and allegations in Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.      Paragraph (l)(1) of 29 U.S.C. § 1021 requires that a plan sponsor or administrator of a multiemployer plan furnish, upon the written the request of any employer who is obligated to contribute to the plan, notice of the estimated amount of the employer's withdrawal liability and "an explanation of how such estimated liability amount was determined, including the actuarial assumptions and methods used to determine the value of the plan liabilities and assets, the data regarding employer contributions, unfunded vested benefits, annual changes in the plan's unfunded vested benefits, and the application of any relevant limitations on the estimated withdrawal liability." 29 U.S.C. § 1021(l)(1)(B).

53.      Paragraph (l)(2)(A)(i) of 29 U.S.C. § 1021 states that any notice required under 29 U.S.C. § 1021(l)(1) must be provided within one hundred eighty (180) days after the request for such notice.

54.      Paragraph (a)(11) of 29 U.S.C. § 1132 empowers an employer that has an obligation to contribute to a multiemployer plan to bring a civil action "to obtain appropriate equitable relief (i) to redress . . . violation[s] [of 29 U.S.C. § 1021(l)] or (ii) to enforce [29 U.S.C. § 1021(l)]." 29 U.S.C. § 1132(a)(11)(B).

55.      Pursuant to 29 U.S.C. § 1132(a)(11), AGNE seeks: (A) to enforce subsection (l) of 29 U.S.C. § 1021, as more fully described in Paragraphs 23 through 50 of this Complaint by compelling production of (i) an estimate of AGNE's withdrawal liability to the Pension Fund as

13

both a "New Employer" and "Existing Employer"; (ii) clarification regarding whether the estimates contained in the WL Worksheet concern a withdrawal during the 2025 plan year or withdrawals occurring between October 1, 2025, and September 30, 2026; (iii) confirmation of the actual estimated amounts of withdrawal liability that would be assessed on AGNE as a New Employer and a withdrawn Existing Employer if AGNE withdrew from the Pension Fund; and (iv) an explanation of how such withdrawal liability estimates were determined, including a statement of the actuarial assumptions (including interest rates) and methods used to determine the value of the Pension Fund's liabilities and assets and to calculate vested benefits, the data regarding employer contributions, unfunded vested benefits, annual changes in the Pension Funds' unfunded vested benefits, and the application of any relevant limitations on the estimated withdrawal liability, and (B) to obtain appropriate equitable relief to redress the violations of 29 U.S.C. § 1021(l) described in Paragraphs 23 through 50 of this Complaint.

56.     AGNE has made repeated, written requests for the information described in part (A) of Paragraph 55 immediately above and Defendants have continually failed to comply in contravention of their statutory obligation under 29 U.S.C. § 1021(l).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court enter an order for the following relief:

A.     Compel Defendants to produce to AGNE:

a.   an estimate of AGNE's withdrawal liability to the Pension Fund as both a "New Employer" and "Existing Employer";

14

b.  clarification regarding whether the estimates contained in the WL Worksheet concern a withdrawal during the 2025 plan year or withdrawals occurring between October 1, 2025, and September 30, 2026;

c.  confirmation of the actual estimated amounts of withdrawal liability that would be assessed on AGNE as a New Employer and a withdrawn Existing Employer if AGNE withdrew from the Pension Fund; and

d.  data and assumptions supporting each of the aforementioned withdrawal liability estimates.

B.  Cause Defendants to reimburse AGNE the administrative expenses, legal expenses, and other costs of suit incurred by AGNE, plus reasonable interest.

C.  Any and all other relief the Court deems just and proper.

Dated:  June 22, 2026                    Respectfully submitted,

/s/Tawny L. Alvarez, Esq.
Tawny L. Alvarez, Bar No. 18898
Attorney for Plaintiff
VERRILL DANA, LLP
One Portland Square
Portland, ME 04101
207-774-4000
talvarez@verrill-law.com

15

29988214_3